IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terance Kazyak,                         :
                                        : No. 905 C.D. 2015
                    Petitioner          : Submitted: December 18, 2015
                                        :
            v.                          :
                                        :
Workers' Compensation Appeal            :
Board (Pepsi Bottling Group             :
(Sedgwick CMS)),                        :
                                        :
                    Respondents         :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED:  February 11, 2016


            Terance Kazyak (Claimant) petitions for review of the April 30, 2015,
order of the Workers' Compensation Appeal Board (WCAB) affirming the decision
of a workers' compensation judge (WCJ) to grant Pepsi Bottling Group and
Sedgwick CMS's (Employer) termination petition, dismiss Employer's suspension
petition, grant in part Claimant's review petition, deny and dismiss Claimant's
penalty petition, and award Claimant litigation costs.  We affirm.

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge
Leadbetter assumed the status of senior judge.

Claimant worked for Employer as a delivery driver and sales representative. (WCJ's Findings of Fact, No. 1a.) On June 3, 2010, Claimant was picking up an empty pallet to put back on the truck and felt a shocking sensation in his head, arms, and legs, resulting in lower back pain. (*Id.*, No. 1b.) Claimant drove himself to a Pittsburgh hospital, where he collapsed in the emergency room. (*Id.*) The hospital discharged Claimant five or six hours later, when a co-worker picked him up. (*Id.*) When Claimant got back to Employer's plant, he collapsed in the nurse's office and was taken to another Pittsburgh hospital. (*Id.*) The hospital discharged Claimant after a few hours. (*Id.*) Claimant has not returned to work for Employer since his June 3, 2010, work injury. (*Id.*)

Employer issued a notice of compensation payable, stipulating that Claimant's work injury consisted of a lumbar strain and an L4-5 disc herniation. (WCJ's Decision at 1.) On July 30, 2012, Employer issued Claimant a notice of ability to return to work and, on August 2, 2012, a letter requesting that Claimant return to work. (WCJ's Findings of Fact, No. 1e.) Claimant instructed his counsel to inform Employer that he was not returning to work. (*Id.*)

On August 7, 2012, Employer filed a petition to terminate or suspend Claimant's benefits, alleging that Claimant was fully recovered from his work injury as of May 7, 2012, and capable of returning to work without restrictions. (WCJ's Decision at 1.) Thereafter, Claimant filed a review petition, arguing that his work injury "should be described as a lumbar strain and [sprain], including microdiscectomy surgery at L4-5 done on 2/23/11." (Review Pet. at 2.) Claimant

2

also argued that his surgery resulted in lumbar radiculopathy and post-laminectomy syndrome. (*Id.*) Thereafter, Claimant filed a penalty petition.

The WCJ held three hearings. Claimant testified that he is not able to return to work for Employer because the work would be too difficult. (WCJ's Findings of Fact, No. 1d.) Claimant testified that he had surgery in February 2011 for his back. (*Id.*, No. 1c.) Claimant testified that he experiences occasional numbness and weakness in his leg and pain in his buttocks. (*Id.*) Claimant testified that he is able to get dressed, go shopping, and help with household chores but is not able to assist with yard work. (*Id.*, No. 1h.)

Employer presented the deposition testimony of Thomas D. Kramer, M.D., who is board-certified in orthopedic surgery. (*Id.*, No. 2.) On May 7, 2012, Dr. Kramer performed an independent medical examination (IME) of Claimant. (*Id.*, No. 2b.) Prior to the IME, Dr. Kramer received a history of the work injury from Claimant and reviewed Claimant's medical records and diagnostic studies. (*Id.*) Dr. Kramer testified that during the IME, Claimant complained of lower back pain that lessened with medication and difficulty lifting his left leg. (*Id.*, No. 2d.) Claimant had no complaints of pain or weakness in his lower extremities. (*Id.*) Dr. Kramer performed a neurological examination, which returned normal results. (*Id.*, No. 2e.) Dr. Kramer reviewed Claimant's May 2011 postoperative magnetic resonance imaging (MRI) and concluded that it showed no evidence of recurrent disc herniation, arachnoiditis, or any ongoing compression of the nerve roots. (*Id.*, No. 2f.)

3

Based on his IME and review of Claimant's medical records, Dr. Kramer concluded that Claimant's June 3, 2010, work injury resulted in a lumbar strain and a disc herniation with left lower extremity radiculopathy. (*Id.*, No. 2g.) Dr. Kramer testified that Claimant's treatment was medically reasonable given Claimant's ongoing complaints, but that the surgery was successful because it eliminated Claimant's lower left leg pain. (*Id.*) This opinion was based on Dr. Kramer's IME, which showed no evidence of objective abnormalities. (*Id.*)

Dr. Kramer also testified that he found nothing during the IME that would warrant further treatment, including injections. (*Id.*, No. 2i.) Dr. Kramer stated that the pain medications Claimant is currently taking would not prevent Claimant from performing his pre-injury position. (*Id.*, No. 2m.) Dr. Kramer also stated that he is unsure why Claimant is being prescribed Neurontin, as there is nothing to indicate the type of nerve pain that would require it. (*Id.*, No. 2o.) Dr. Kramer testified that Claimant had fully recovered from his June 3, 2010, work injury, and that there are no findings indicating that Claimant would be precluded from returning to work without restrictions. (*Id.*, No. 2g.)

Claimant presented the deposition testimony of J. William Bookwalter, III, M.D., who is board-certified in neurosurgery. (*Id.*, No. 4.) Dr. Bookwalter testified that he first treated Claimant on October 25, 2010. (*Id.*, No. 4a.) Dr. Bookwalter's physical examination of Claimant revealed spasms and a reduced range of motion in Claimant's back, a positive straight-leg-raising test, and weakness on his left side. (*Id.*, No. 4b.) On February 23, 2011, Dr. Bookwalter performed a lumbar microdiscectomy on Claimant. (*Id.*, No. 4c.) Dr. Bookwalter testified that this

4

procedure is minimally invasive.  (*Id.*, No. 4j.)  At a March 2011 appointment, Claimant exhibited improvement in his episodic left leg pain, and Dr. Bookwalter recommended that Claimant engage in a supervised physical rehabilitation program with Dr. Frank Artuso.  (*Id.*, No. 4c.)  Dr. Bookwalter reviewed the results of a May 19, 2011, MRI ordered by Dr. Artuso, which showed that Claimant's herniation was gone with no new findings.  (*Id.*, No. 4d.)

Dr. Bookwalter testified that he next treated Claimant on August 28, 2012, at which time Claimant reported relief from his radiculopathy symptoms but continued lower back pain.  (*Id.*, No. 4e.)  Dr. Bookwalter believed that it was unlikely that Claimant would ever return to his pre-injury position as a truck driver.  (*Id.*)  Dr. Bookwalter ordered a second MRI in September 2012, which showed significant degenerative change but no evidence of a new herniation.  (*Id.*, No. 4f.)  In September 2012, Dr. Bookwalter believed that Claimant had post-laminectomy syndrome, which means he has persistent symptoms despite a technically adequate procedure to correct those symptoms.  (*Id.*, No. 4g.)  At that time, Dr. Bookwalter believed that Claimant was able to perform sedentary, light-duty work and did not require another surgery at the L4-5 levels.  (*Id.*)

On cross-examination, Dr. Bookwalter testified that he had not reviewed Claimant's or Dr. Kramer's testimonies or Dr. Kramer's narrative report prior to his deposition.  (*Id.*, No. 4h.)  Dr. Bookwalter also testified that Claimant had a preexisting degenerative back condition.  (*Id.*, No. 4i.)  Dr. Bookwalter agreed that as of September 2012, Claimant had no true weakness in his left leg and that Claimant's generalized weakness would not be consistent with specific nerve compression.  (*Id.*,

No. 4k.) Dr. Bookwalter opined that Claimant's generalized weakness was instead caused by his preexisting degenerative condition and spasms. (*Id.*) Dr. Bookwalter agreed that as of September 2012, Claimant had a subjective, generalized weakness in his lower extremity rather than a focal weakness. (*Id.*, No. 4m.)

Claimant also presented the deposition testimony of Paul S. Lieber, M.D., who is board-certified in pain medicine, rehabilitation, and electrodiagnostic studies. (*Id.*, No. 3.) Dr. Lieber testified that he first physically examined Claimant on December 19, 2011. (*Id.*, No. 3b.) Dr. Lieber admitted that the examination did not reveal any objective neurological findings. (*Id.*, No. 3h.) On March 8, 2012, Dr. Lieber suggested injections into facet joints at L4-5 and rhizotomies on the left L3, L4, and L5 discs. (*Id.*, No. 3b.) On March 19, 2012, Dr. Lieber performed the same procedure on the right L3, L4, and L5 discs. (*Id.*) The procedure improved Claimant's back pain significantly, but his pain in the posterior aspect of his left leg continued. (*Id.*)

On February 8, 2013, Dr. Lieber conducted another physical examination of Claimant. (*Id.*, No. 3d.) Based on his examination, Dr. Lieber concluded that Claimant had sustained a lumbar strain and sprain and that he had post-laminectomy syndrome secondary to the surgery or subjective symptoms. (*Id.*, No. 3e.) Dr. Lieber testified that Claimant still had subjective pain in his L5 distribution and down the left leg, for which Claimant required medication. (*Id.*) Dr. Lieber opined that Claimant is not capable of performing his former position but is capable of light-duty work. (*Id.*, No. 3f.) Dr. Lieber testified that during a March 1, 2013, appointment, Claimant complained of the same subjective lower back pain he

6

had before the surgery. (*Id.*, No. 3g.) Dr. Lieber acknowledged that there were some signs of symptom magnification but testified that they were not glaring. (*Id.*) Dr. Lieber testified that at that time, Claimant was not fully recovered from his work injury. (*Id.*)

On cross-examination, Dr. Lieber acknowledged that his initial physical examination of Claimant on December 19, 2011, revealed no objective neurological findings. (*Id.*, No. 3h.) Dr. Lieber also agreed that Dr. Bookwalter never diagnosed Claimant with a facet joint injury. (*Id.*) Dr. Lieber acknowledged that his diagnosis of post-laminectomy syndrome was based solely on Claimant's subjective complaints of pain. (*Id.*)

Employer presented an additional deposition of Dr. Kramer. Before his second deposition, Dr. Kramer reviewed the testimonies of Dr. Bookwalter and Dr. Lieber. (*Id.*, No. 5a.) Based on this review, Dr. Kramer concluded that there were no objective findings indicating that Claimant's condition had changed since Dr. Kramer's last exam. (*Id.*) Dr. Kramer testified that there was no objective evidence to support Dr. Lieber's diagnoses. (*Id.*, Nos. 5b-c, 5e, 5f-g.) Dr. Kramer testified that post-laminectomy syndrome is just a way of stating that there is subjective pain following surgery at the disc level. (*Id.*, No. 5d.) Dr. Kramer was unable to find an objective cause of Claimant's alleged pain because Claimant had a negative straight leg raise, there was no evidence of a neurological deficit, and Claimant's September 2012 MRI did not indicate a recurrent disc herniation. (*Id.*) Dr. Kramer reiterated his opinion that Claimant had fully recovered from his L4-5 disc herniation and that there was no evidence of ongoing lumbar strain. (*Id.*, No. 5i.)

7

The WCJ credited Dr. Kramer's testimony that Claimant has fully recovered from his work injury, consisting of a lumbar sprain and an L4-5 disc herniation, and is able to return to his pre-injury position. (*Id.*, No. 6.) The WCJ also credited Dr. Kramer's testimony that there was no evidence indicating a recurrent disc herniation, post-operative radiculopathy, or left leg pain, noting that Dr. Bookwalter agreed with that assessment. (*Id.*) The WCJ discredited Dr. Bookwalter's and Dr. Lieber's testimony and conclusions to the extent that they conflicted with Dr. Kramer's. (*Id.*) The WCJ discredited Dr. Lieber's diagnosis of a facet injury, noting that Dr. Bookwalter was the one who performed surgery on Claimant and did not find a facet injury. (*Id.*) The WCJ also noted that Dr. Bookwalter never opined that Claimant has exacerbated any preexisting degenerative condition in his back since the surgery. (*Id.*) The WCJ found that based on his observations of Claimant, Claimant was exaggerating his disability in order to avoid returning to his pre-injury position. (*Id.*)

The WCJ granted Employer's termination petition, concluding that Employer met its burden of proving that Claimant had recovered from his work injury and that his disability had ceased effective May 7, 2012. (WCJ's Conclusions of Law, No. 2.) The WCJ dismissed Employer's suspension petition as moot. (WCJ's Order, 10/29/13, at 1.) The WCJ granted in part Claimant's review petition because the WCJ found that Claimant's February 23, 2011, surgery was causally related to his work injury and awarded Claimant $10,045.33 in litigation costs. (WCJ's Findings of Fact, Nos. 6, 7.) The WCJ denied that part of Claimant's review petition that asserted that Claimant's surgery resulted in lumbar radiculopathy and post-laminectomy syndrome. (*Id.*) The WCJ also dismissed Claimant's penalty

8

petition. (*Id.*, No. 6.) Claimant appealed to the WCAB, which affirmed. Claimant now petitions this court for review.[2]

First, Claimant argues that Findings of Fact Numbers 2g-h, 3h, 4n, 5a, and 5e, which summarize the testimonies of Dr. Bookwalter, Dr. Lieber, and Dr. Kramer, and Finding of Fact Number 6, wherein the WCJ weighs the evidence of record, are not supported by substantial evidence. Claimant essentially argues that the WCJ erred in giving more weight to Dr. Kramer's testimony than that of Claimant, Dr. Bookwalter, and Dr. Lieber.[3] However, Claimant's argument amounts to a request to reweigh the evidence, which this court may not do. *See Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004) ("Determinations as to evidentiary weight are not subject to appellate review.").

Claimant also argues that the WCJ capriciously disregarded Dr. Bookwalter's and Dr. Lieber's testimony that Claimant has not fully recovered from

---

[2] Our review is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704. Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Williams v. Workers' Compensation Appeal Board (USX Corporation–Fairless Works)*, 862 A.2d 137, 143 n.6 (Pa. Cmwlth. 2004).

[3] Claimant also argues that the WCJ was biased against him because the WCJ found, based on his in-person observations of Claimant, that Claimant was exaggerating his disability. However, a WCJ may credit or discredit a witness's testimony based on the witness's demeanor. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 828 A.2d 1043, 1052-53 (Pa. 2003). Therefore, Claimant's argument is without merit.

his work injury. However, Claimant waived this argument because he did not raise it in his appeal to the WCAB, as required by 34 Pa. Code §111.11(a)(2).[4] *See Simmons v. Workers' Compensation Appeal Board (Powertrack International)*, 96 A.3d 1143, 1144 n.1 (Pa. Cmwlth. 2014) (holding that the claimant waived arguments by failing to raise them in his appeal to the WCAB), *appeal denied*, 110 A.3d 999 (Pa. 2015). Even if Claimant had not waived this issue, the WCJ did not capriciously disregard this evidence because the WCJ expressly addressed and rejected it. *See Williams*, 862 A.2d at 145 (stating that the WCJ's express consideration and rejection of testimony is, by definition, not a capricious disregard thereof).

Next, Claimant argues that the WCJ erred in concluding that Employer met its burden of establishing that Claimant has fully recovered from his work injury. We disagree.

An employer petitioning for termination of a claimant's benefits "bears the burden of proving, through substantial, competent[,] credible medical testimony, that a claimant's disability has ceased or that any remaining disability is no longer related to the work injury." *Moore v. Workers' Compensation Appeal Board (American Sintered Technologies, Inc.)*, 759 A.2d 945, 949 (Pa. Cmwlth. 2000). The Pennsylvania Supreme Court has held:

---

[4] The regulation at 34 Pa. Code §111.11(a)(2) provides that an appeal to the WCAB must include:

> [a] statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of the law which are alleged. General allegations which do not specifically bring to the attention of the [WCAB] the issues decided are insufficient.

10

> In a case where the claimant complains of continued pain, [the employer's] burden is met when [the] employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no *objective* medical findings which either substantiate the claims of pain or connect them to the work injury.

*Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997) (emphasis added).

Here, the WCJ credited Dr. Kramer's testimony that Claimant has fully recovered from his June 3, 2010, work injury, consisting of a lumbar sprain and an L4-5 disc herniation, and is able to return to his pre-injury position. The WCJ noted that Dr. Kramer examined Claimant, testified in great detail before and after his IME of Claimant, and reviewed Claimant's medical history and the testimonies of Claimant, Dr. Bookwalter, and Dr. Lieber. The WCJ also determined that Claimant's claims of continued pain as a result of his work injury were not supported by any objective medical evidence. Therefore, based on the credible evidence of record, the WCJ properly concluded that Employer satisfied its burden of proving that Claimant had fully recovered from his work injury as of May 7, 2012.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terance Kazyak,                             :
                                            : No. 905 C.D. 2015
                    Petitioner              :
                                            :
        v.                                  :
                                            :
Workers' Compensation Appeal                :
Board (Pepsi Bottling Group                 :
(Sedgwick CMS)),                            :
                                            :
                    Respondents  :


O R D E R


        AND NOW, this 11<u>th</u> day of <u>February</u>, 2016, we hereby affirm the April

30, 2015, order of the Workers' Compensation Appeal Board.




                                    _____
                                    ROCHELLE S. FRIEDMAN, Senior Judge