IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dones Barrios, : 
               Petitioner : 
  : 
    v. : No. 264 C.D. 2020
  : SUBMITTED: September 11, 2020
Workers' Compensation Appeal : 
Board (Interiano), : 
               Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                     FILED: December 18, 2020

     Dones Barrios (Claimant) petitions this Court for review of a February 11, 2020 order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a Workers' Compensation Judge (WCJ), denying Claimant benefits under the Workers' Compensation Act (Act).[1]  The Board determined that Claimant was not eligible for benefits because he failed to establish an employment relationship with Roberto Interiano (Interiano).  For the following reasons, we affirm.

## I. Background

     On August 4, 2017, Claimant filed a claim petition seeking compensation under the Act for a fracture to his left heel, ankle, and foot, which he allegedly sustained on June 30, 2017, while working as a roofer for Interiano.  Claim Petition at 2; Certified Record (C.R.) Item No. 2.  Interiano denied that he employed

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041, 2501-2710.

Claimant and asserted that he was "not an Employer of Employees in The Commonwealth of Pennsylvania . . . ." C.R. Item No. 4. On August 31, 2017, Claimant filed a second claim petition against the Uninsured Employers Guaranty Fund (UEGF), seeking payment of benefits from the UEGF due to Interiano's status as an uninsured employer.[2] UEGF denied that Claimant was entitled to the relief sought and demanded proof of his claim. C.R. Item No. 7. The two claim petitions were consolidated for review before the WCJ.

Claimant testified by deposition and live before the WCJ and presented the June 11, 2018 deposition testimony of his treating physician, Daisy Rodriguez, M.D. The UEGF presented the November 16, 2018 deposition testimony of David Vegari, M.D., who performed an independent medical exam (IME) of Claimant on June 1, 2018.

### A. Claimant's Evidence

At his December 18, 2017 deposition, Claimant testified that he began renting a room in Interiano's house in April 2017. Notes of Testimony (N.T.) 12/18/17, at 20. In June 2017, Interiano offered Claimant a job as a roofer earning $720 per week, paid in cash. *Id.* at 5-6, 20. Claimant could not recall how much cash he received each day and he did not know how long the roofing job would last. *Id.* at 6, 20. Claimant did not have any records establishing his rate of pay and he did not pay taxes on the wages he received. *Id.* at 22-23.

Claimant sustained the alleged work injury on June 30, 2017, when he fell from the roof of a private residence where he and Interiano had been working.

---

[2] Pursuant to Section 1602(c) of the Act, added by the Act of November 9, 2006, P.L. 1362, the UEGF provides workers' compensation benefits "where the employer liable for the payments failed to insure or self-insure its workers' compensation liability . . . at the time the injuries took place." 77 P.S. § 2702(c).

Claimant complained of pain in his head, back, and left foot. *Id.* at 11. Interiano's 13-year-old nephew, Hugo Interiano (Hugo), drove Claimant to the hospital, where emergency room staff x-rayed Claimant's left foot and placed it in a cast. *Id.* at 10, 12. Approximately three weeks later, Claimant underwent surgery to place screws in his left foot. *Id.* Claimant continues to have pain from his injuries, which he treats with ibuprofen and physical therapy. Claimant has not worked since June 30, 2017. *Id.* at 13, 16, 25-26.

At the deposition, Claimant further stated that the roofing job was the first work he performed for Interiano and they did not discuss how much Claimant would earn. *Id.* at 20. Claimant testified that he and Interiano had not been in contact since the June 30, 2017 injury and he never asked Interiano to pay his medical bills. *Id.* at 24. After subsequent questioning, however, Claimant stated that he continued to live with Interiano for approximately one month after the June 30, 2017 work injury and Interiano advised that he did not carry workers' compensation insurance. *Id.* at 25. Claimant moved out of Interiano's house because he could not work and had no money to pay rent. *Id.* at 34. Interiano did not ask Claimant to leave; Claimant left on his own. *Id.* at 35.

Claimant admitted that, while receiving treatment at the hospital on June 30, 2017, he "lied" and used the name of his brother, Ever Chavez, who lives in Guatemala. *Id.* at 42-43. Claimant testified that Hugo filled out the paperwork at the hospital, and "[Hugo] asked me what name was I going to put and I said I was going to use my brother's name." *Id.* at 43. When asked why he would use his brother's name, Claimant replied, "[b]ecause." *Id.* After denying he was Ever Chavez, Claimant provided a Guatemalan picture identification (ID) card, which

3

identified him by the name Dones Barrios. *Id.* at 44. Claimant testified that he was born in Guatemala and came to the United States in 2011. *Id.* at 17.

Claimant also testified in-person before the WCJ at a hearing held on November 7, 2018. During that hearing, Claimant indicated that he moved to the United States from Guatemala in 2009. N.T., 11/7/18, at 19. Claimant stated that he continued to have pain in his head, lower back, and left foot, due to the June 30, 2017 injury. *Id.* at 13-14. Claimant did not believe he could return to work for Interiano because "[he did not] feel well and [he] wouldn't like to work for him now." *Id.* at 17. Claimant testified that Interiano was "crazy" and "didn't even help [him] with medicine." *Id.* at 37. He stopped treating with Dr. Rodriguez in March 2018, because he no longer had transportation. *Id.* at 15.

Claimant agreed during cross-examination that the roofing job was only for a week. *Id.* at 23. In later testimony, however, Claimant denied the job was only for one week and stated that Interiano "didn't tell [him] how long" that job would last. *Id.* at 36. Claimant testified that he asked Interiano for help with his medical bills and Interiano agreed to "talk, but [they] never talked." *Id.* at 38. Interiano would not allow Claimant to continue living with him because he could not pay rent. *Id.*

Dr. Rodriguez is board certified in internal medicine and first examined Claimant on August 15, 2017, approximately six weeks after the work injury. N.T, 6/11/18, at 7. During that examination, Claimant complained of severe pain in his left foot, recurrent headaches, and low back pain, which Claimant treated with oxycodone and ibuprofen. *Id.* at 7, 10. Claimant walked with the assistance of crutches. *Id.* at 10. Claimant advised Dr. Rodriguez of the circumstances surrounding the June 30, 2017 injury and the treatment he received. *Id.* at 7-9. Dr. Rodriguez's physical examination revealed tenderness in Claimant's lower back

4

while bending and some limitations with his flexion and extension. *Id.* at 11. Dr. Rodriguez was unable to test the range of motion in Claimant's left foot, as it was still immobilized at the time of her exam. *Id.* at 12. A subsequent examination on November 7, 2017, revealed reduced flexion on Claimant's left foot. *Id.* at 16.

Dr. Rodriguez ultimately diagnosed Claimant as having multiple fractures of his left foot, requiring external fixation; strain and sprain of the lower back; post-traumatic headaches due to a closed head injury; and a thoracic strain and sprain. *Id.* at 13-14. Dr. Rodriguez's diagnosis was based on Claimant's description of the mechanism of injury, his symptoms, and the findings of her physical exam. *Id.* at 24. As Dr. Rodriguez did not have Claimant's medical records, all information regarding Claimant's medical history and treatment were offered by Claimant himself. Dr. Rodriguez prescribed physical therapy, but Claimant only attended 2 of the 36 scheduled physical therapy visits. *Id.* at 26-27. Dr. Rodriguez last saw Claimant in March 2018. *Id.* at 22. While Claimant's condition had improved, Dr. Rodriguez did not release him to return to work. *Id.* at 22.

### B. Interiano/UEGF Evidence

Dr. Vegari is a board-certified orthopedic surgeon. N.T., 11/16/18, at 8-9. *See* C.R. Item No. 25. During the June 1, 2018 IME, Dr. Vegari obtained a medical history from Claimant, who related that he sustained an injury on June 30, 2017, after falling from a roof. *Id.* at 12. Claimant complained of pain in his left ankle, which made walking difficult, and pain in his lower back. *Id.* at 14. Claimant advised that he did not take any medication to treat his pain. *Id.* Dr. Vegari performed a physical examination and reviewed Claimant's medical records, including the hospital records maintained under the name of Ever Chavez. *Id.* at 14-16. Claimant had limited range of motion in his left foot. *Id.* at 16. Dr. Vegari's

findings with regard to Claimant's spine were normal. *Id.* Dr. Vegari agreed that Claimant's injuries, which consisted of fractures to his left foot and ankle, were sustained in a June 30, 2017 fall from a roof. *Id.* at 18. However, Dr. Vegari did not conclude that Claimant sustained a lower back injury in the fall, nor did he address whether Claimant sustained a head injury, as it was outside of his area of expertise. *Id.* Dr. Vegari opined that Claimant's injuries precluded him from working as a roofer; however, Claimant could work a light-duty position with restrictions, including a limit on standing to 3 hours per day and lifting only 5 to 10 pounds. *Id.* at 19.

### C. WCJ Decision

On February 25, 2019, the WCJ circulated a decision denying both claim petitions. C.R., Item No. 8. The WCJ credited Claimant's testimony that he sustained an injury to his left foot and ankle on June 30, 2017, when he fell from a roof. WCJ's Decision, Finding of Fact (F.F.) No. 7. He discredited Claimant's testimony regarding his employment relationship with Interiano as vague and inconsistent. *Id.* Claimant testified that he was helping Interiano, who was also Claimant's landlord, to remodel a house. *Id.* While Claimant asserted he received a weekly wage of $720, he acknowledged in subsequent testimony that he had not discussed wages or the length of his employment. *Id.* Claimant testified at one point that the roofing job was for one week but later indicated that the length of his employment was never discussed. *Id.* Claimant also presented no documents demonstrating the amount of wages received or evidencing the payment of taxes for those wages. *Id.* Claimant denied asking Interiano to pay his medical bills, but then testified he would not work for Interiano in the future because Interiano would not pay his medical bills. *Id.* In spite of his claim that he continued to suffer from

6

disabling pain, Claimant only attended 2 out of 36 scheduled physical therapy appointments. *Id.* The WCJ observed that Claimant further damaged his credibility by using a false name at the hospital. *Id.* Accordingly, the WCJ rejected Claimant's testimony regarding his employment relationship. *Id.*

With regard to the medical evidence presented, the WCJ found the testimony of Dr. Vegari to be more credible than that of Dr. Rodriguez because Dr. Vegari reviewed Claimant's medical records, while Dr. Rodriguez did not. *Id.*, F.F. No. 8. The WCJ thus rejected Dr. Rodriguez's testimony to the extent it conflicted with Dr. Vegari's testimony. *Id.* Based on his review of the evidence, the WCJ found that Claimant failed to establish that he was an employee of Interiano, or any other employer, on June 30, 2017. F.F. No. 9. As such, the WCJ denied the claim petition against Interiano. WCJ Decision, Conclusion of Law (C.L.) No. 1. Furthermore, because Interiano was not liable for Claimant's injury, the WCJ denied the claim petition filed against the UEGF. C.L. No. 2.

Claimant appealed to the Board, which affirmed. This appeal followed.[3]

## II. Issues

On appeal, Claimant argues that the WCJ capriciously disregarded competent evidence and did not render a reasoned decision under the Act.

## III. Analysis

Claimant argues that a review of the WCJ's findings of fact reflects a deliberate disregard of the evidence, and the WCJ's characterization of Claimant's testimony as vague is an inadequate basis upon which to find that no employment

---

[3] Our standard of review is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Comp. Appeal Bd. (Bethenergy Mines, Inc.)*, 684 A.2d 673, 676 n.6 (Pa. Cmwlth. 1996).

7

relationship existed. In support of his arguments, Claimant cites his undisputed testimony that he fell from a roof while working for Interiano, the owner of a roofing company. Neither Interiano nor the UEGF presented any fact witnesses in opposition to the claim petition, and the UEGF's medical expert agreed that Claimant's injuries were sustained when he fell from a roof. Moreover, the WCJ credited Claimant's testimony regarding the circumstances of his injury. Claimant maintains that the WCJ's decision must be reversed, as he failed to adequately explain his reasons for rejecting Claimant's testimony regarding the existence of an employment relationship.

A claimant must prove an employment relationship in order to receive benefits under the Act. *Am. Road Lines v. Workers' Comp. Appeal Bd. (Royal)*, 39 A.3d 603, 610 (Pa. Cmwlth. 2012). The existence of an employer-employee relationship is a question of law based on the facts presented in each case. *Id.* The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). This Court must accept the WCJ's findings if, upon consideration of the evidence as a whole, the findings are supported by competent evidence of record. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. Cmwlth. 1993).

Section 422(a) of the Act provides that

> [a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and *explains the rationale for the decisions* so that all can determine why and how a particular result was reached.

8

77 P.S. § 834 (emphasis added). Thus, to satisfy the "reasoned decision" requirement of Section 422(a) of the Act, the "WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it." *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1243 (Pa. Cmwlth. 2013). Section 422(a) does not, however, permit a party to second-guess the WCJ's reasons for his credibility determinations. *Verizon Pa. Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1161 n.3. (Pa. Cmwlth. 2015). A court may overturn a credibility determination only where it is arbitrary and capricious or so fundamentally dependent on a misapprehension of the facts, or so otherwise flawed, as to render it irrational. *Id.* at 1163 (internal citations omitted).

Section 422(a) further provides that "[u]ncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection." 77 P.S. § 834. The WCJ is not required, however, to accept the uncontested testimony of a claimant. *Newcomer Prods. v. Workers' Comp. Appeal Bd. (Irvin)*, 826 A.2d 69, 75 (Pa. Cmwlth. 2003). "A capricious disregard of evidence occurs . . . when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004).

Presently, the WCJ accepted Claimant's testimony that he fell from a roof on June 30, 2017, and sustained injuries. However, the WCJ discredited Claimant's testimony regarding his alleged employment relationship with Interiano. The WCJ provided several reasons for rejecting Claimant's testimony in that regard, including that: (1) Claimant initially testified he was to be paid $720 and the job was to last one week but later stated that no rate of pay was set and he did not know how long

9

the job would last; (2) Claimant denied asking Interiano for assistance in paying his medical bills but then testified he would no longer work for Interiano because he would not help pay Claimant's medical bills; (3) Claimant testified that he continued to have disabling symptoms; however, Claimant only attended 2 of the 36 scheduled physical therapy sessions; and (4) Claimant's credibility was compromised by the fact that he used a false name at the hospital. *See* WCJ Decision, F.F. No. 7.

For these reasons, we cannot conclude that the WCJ capriciously ignored Claimant's evidence nor that he rejected Claimant's testimony solely on the basis of vagueness. Rather, the WCJ iterated multiple instances in which Claimant's live and deposition testimony contradicted itself. The WCJ also relied on Claimant's admission that he lied to the hospital when identifying himself under his brother's name. Claimant's testimony was vague and contradictory on the very basics of his alleged employment, such as how much he was paid and how long the job would last.

Claimant's argument is, in essence, a challenge to the WCJ's credibility determinations. Claimant has failed to demonstrate that these determinations were "arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render [them] irrational." *Verizon Pa.*, 116 A.3d at 1163. We will not disturb them on appeal.

As stated earlier, Claimant had the burden of proving the existence of an employment relationship with Interiano. His testimony in that regard was rejected by the WCJ as not credible. In the absence of any other evidence which demonstrated the existence of an employment relationship, we are constrained to

10

conclude that the WCJ correctly dismissed Claimant's claim petitions filed against Interiano and the UEGF.  Accordingly, we affirm the order of the Board.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dones Barrios,                          :
                Petitioner       :
                                    :
      v.                           :   No. 264 C.D. 2020
                                    :
Workers' Compensation Appeal            :
Board (Interiano),                      :
                Respondent       :

# **O R D E R**

AND NOW, this 18th day of December, 2020, the Order of the Workers' Compensation Appeal Board, dated February 11, 2020, is hereby AFFIRMED.

 

_____

ELLEN CEISLER, Judge