**Joanne ZEIGLER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (JONES APPAREL GROUP, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 5, 1999.

Decided April 13, 1999.

---

Alan R. Harris, Philadelphia, for petitioner.

Howard J. Burk, Philadelphia, for respondent.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Joanne Zeigler (Claimant) petitions for review of the June 26, 1998 order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) granting the petition to modify and suspend Claimant's disability benefits filed by Jones Apparel Group, Inc. (Employer). We affirm in part and reverse in part.

The relevant facts are briefly summarized from the WCJ's findings.[1] On August 31, 1994, Claimant sustained a work-related injury described by Employer in a notice of compensation payable (NCP) as an acute lumbar strain/sprain. At the time, Claimant worked for Employer as a custodian on the second shift. Claimant was concurrently employed with the Bensalem Township School District, where she supervised children during lunch and recess; however, Claimant's concurrent earnings were not included in her average weekly wage as set forth on the NCP.

On May 1, 1995, Employer filed a petition to terminate/modify/suspend benefits. Employer requested a termination of benefits on the grounds that Claimant had fully recovered from her injury as of February 27, 1995. Alternatively, Employer sought a suspension or modification of benefits effective April 17, 1995, based on Claimant's ability to return to work. Claimant filed a timely answer denying these allegations and the matter was assigned to a WCJ. Employer later amended its petition to request modification of Claimant's temporary total disability benefits to partial disability based upon Claimant's concurrent employment with the school district.

In support of its petition, Employer presented the testimony of Gaurang P. Bhatt, M.D., who examined Claimant on February 27, 1995. Dr. Bhatt testified that an MRI of Claimant's spine revealed that Claimant had suffered a herniated disc. Based upon his examination of Claimant, Dr. Bhatt opined that the herniated disc had completely healed and that Claimant had fully recovered from her work injury. Although Dr. Bhatt would restrict Claimant from heavy lifting, he opined that she was fully capable of returning to her pre-injury job.

Employer also presented the testimony of Donna Sullivan, a benefits administrator. Ms. Sullivan testified that she found a modified position for Claimant, based on restrictions set forth in a functional capacity form submitted by Dr. Bhatt. By letter dated March 14, 1995, Employer informed Claimant that she was cleared by Dr. Bhatt to return to a modified position and would be

---

1. While we recognize certain inconsistencies within the WCJ's findings, we conclude that these facts are not material to our determination.

paid her pre-injury wage. The letter instructed Claimant to report to work on April 17, 1995. Employer sent Claimant a second letter dated April 7, 1995, advising Claimant that the modified position complied with a "return to work capabilities" form approved by her treating physician, Stephen F. Ficchi, D.O. However, on cross-examination, Ms. Sullivan admitted that Dr. Ficchi had indicated on that form that he disapproved the modified position.

Claimant testified that she returned to work at 8:00 a.m. on April 17, 1995 and reported to Bob Earl, her supervisor, who instructed Claimant as to her modified duties. Claimant showed Mr. Earl a form completed by Dr. Ficchi and told Mr. Earl that her doctor had restricted her from performing the pushing and pulling her assigned tasks required. Mr. Earl told Claimant that he had no other work for her, and Claimant went to see Ms. Sullivan. After waiting for some time, Claimant was advised to return to Mr. Earl. Mr. Earl could not be found and, at approximately 2:00 p.m., the plant manager told Claimant to go home.

Dr. Ficchi has been Claimant's treating physician since 1988 and he began treating Claimant for her work injury in October of 1994. Dr. Ficchi reviewed the results of a functional capacity evaluation performed on December 1, 1994. (Claimant's Exhibit 2.) The evaluation, referred to as the ERGOS examination, compares an individual's capability to perform a number of detailed requirements according to parameters set by the Department of Labor for a generic custodial position. Dr. Ficchi explained that the ERGOS evaluation report designates deficiencies by the use of red and blue numbers, with numbers in black reflecting that the individual meets the standard requirements. He stated that the results as compiled by his associate were valid, noting, however, that the copy of the ERGOS form entered into evidence was in black and white.

According to Dr. Ficchi, the results of the December 1, 1994 evaluation indicated that Claimant was approximately 30 – 40 % deficient in the areas of strength, flexibility and endurance. Dr. Ficchi opined that Claimant was not capable of returning to the modified position, in part because she was not able to work an eight-hour day. Dr. Ficchi also testified that the results of a second ERGOS evaluation, performed in August of 1995, reflected that Claimant had increased deficits in the areas of strength, flexibility and endurance. He explained that this increased functional deficit resulted from a lack of use of certain muscles.

The WCJ accepted Ms. Sullivan's testimony as credible, but rejected Dr. Bhatt's testimony as not persuasive. The WCJ accepted Claimant's testimony as credible and Dr. Ficchi's testimony as persuasive in part. The WCJ rejected Dr. Ficchi's opinion that Claimant was not capable of performing the modified position as of April 17, 1995.

Having rejected Dr. Bhatt's opinion that Claimant fully recovered from her work injury, the WCJ denied Employer's request for termination. The WCJ next reviewed the evidence in light of Employer's request for a suspension of benefits based on its offer of a modified position.[2] The WCJ first concluded that the December 1, 1994 ERGOS evaluation was sufficient medical evidence to satisfy Employer's burden to prove a change in Claimant's condition. The WCJ then reviewed the job description for the modified position, noted Dr. Ficchi's opinion that Claimant was "pretty close" to performing those requirements, and, again relying on the December 1, 1994 ERGOS evaluation, concluded that the modified position was medically suitable for Claimant.

Examining Claimant's response to the job offer, the WCJ acknowledged that a claimant does not show bad faith when she relies on restriction placed upon her by her treating physician. However, the WCJ concluded that Claimant's reliance on Dr. Ficchi's re-

---

2. An employer seeking to modify a claimant's benefits on the basis that the claimant has recovered some or all of his ability must produce medical evidence of a change in condition and evidence of a referral to an available job within the claimant's medical limitations. *Kachinski v.* *Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987). Once the employer meets this burden, the burden shifts to the claimant to prove that she followed through on the referral in good faith. *Id.*

strictions was misplaced, since the WCJ had rejected Dr. Ficchi's opinion. The WCJ concluded that Claimant's refusal to perform the duties of the modified position demonstrated a lack of good faith and ordered a suspension of benefits as of April 17, 1995.

With Claimant's acquiescence, the WCJ modified Claimant's benefits from total to partial disability as of August 31, 1994, based on Claimant's earnings with the Bensalem Township School District. The WCJ further ordered an adjustment of Claimant's average weekly wage to include that income.[3]

Claimant appealed to the Board, alleging that the WCJ erred in concluding that Employer met its burden of proof for a suspension of benefits and erred in concluding that Claimant did not follow through on the job referral in good faith. Among other things, the Board agreed that, "Claimant's allegations that she could not perform the modified position were directly contradicted by the ERGOS functional capacity evaluation which was found credible by the WCJ." (Board's opinion, pp. 6–7.) Accordingly, the Board affirmed the WCJ's decision.

On appeal to this Court,[4] Claimant argues that the Board erred in affirming the WCJ's decision because there is no medical evidence to establish a change in Claimant's condition or that the offered position was within Claimant's medical restrictions. Claimant also argues that the WCJ erred in concluding she failed to follow through on the job referral in good faith.

In concluding that Employer satisfied its burden of proof, the WCJ relied on the December 1, 1994 ERGOS evaluation form. The WCJ determined that this earlier evaluation was the more valid depiction of Claimant's abilities as of March 14, 1995, because it was performed closer in time than the ERGOS evaluation of August 29, 1995, which reflected a worsening of Claimant's condition. The WCJ noted Dr. Ficchi's statement that the ERGOS evaluations were valid and that Dr. Ficchi based his opinions on them. However, the WCJ rejected Dr. Ficchi's opinion that these evaluations reflected Claimant's inability to perform the duties of the offered position. Instead, the WCJ, who of course was not qualified as an expert medical witness in this case, impermissibly substituted and relied on her own opinion to make findings as to the medical significance of these test results.

Therefore, we conclude that the WCJ erred in determining that the evidence was sufficient to establish both a change in Claimant's medical condition and the suitability of the modified position.[5] Since Employer failed to satisfy its initial burden of proof, the burden never shifted to Claimant to prove that she followed through on the referral in good faith, and we need not address Claimant's arguments on this issue.

Accordingly, we affirm the order of the Board as it affirms the WCJ's denial of Employer's termination petition, the modification of Claimant's disability status from total to partial disability and the adjustment of Claimant's average weekly wage. That portion of the Board's order affirming the WCJ's suspension of Claimant's benefits is reversed.

### ORDER

NOW, April 13, 1999, the order of the Workers' Compensation Appeal Board, at

3. See *Miller v. Workmen's Compensation Appeal Board (Midlantic Coast Delivery System)*, 661 A.2d 916 (Pa.Cmwlth.1995), *appeal denied*, 543 Pa. 733, 673 A.2d 338 (1996), regarding treatment of wages from concurrent employment.

4. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

5. An employer is not required to prove a change in medical condition when suspension or modification is sought based on job availability, rather than a change in medical condition. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Cmwlth. 75, 591 A.2d 762 (1991). However, the burden does not shift to the Claimant until the employer also proves that the claimant had been medically cleared for the position and was cognizant of her medical clearance. *Id.*

No. A97–3172, dated June 26, 1998, as it affirms the WCJ's denial of Employer's termination petition, the modification of Claimant's disability status from total to partial disability, and the adjustment of Claimant's average weekly wage, is affirmed. That portion of the Board's order affirming the WCJ's suspension of Claimant's benefits is reversed.