# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Northampton County Children | : | **CASE SEALED** |
| Youth and Families Division, | : | |
| Petitioner | : | |
| | : | No. 350 C.D. 2025 |
| v. | : | |
| | : | Submitted: December 8, 2025 |
| Department of Human Services, | : | |
| Respondent | : | |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY
JUDGE DUMAS**                                        **FILED:  January 21, 2026**

Northampton County Children Youth and Families Division (CYFD) has petitioned this Court to review an order entered by the Department of Human Services (Department) Bureau of Hearings and Appeals (BHA) on February 27, 2025, which sustained an appeal by R.C. and directed the expungement of an indicated report of child abuse from the Pennsylvania ChildLine Registry. CYFD contends that BHA has misapplied this Court's precedent in concluding that CYFD failed to prove by substantial evidence that R.C. had created a reasonable likelihood of injury to a child. Upon careful review, we reverse.

# I. BACKGROUND[1]

Returning home from a music festival, R.C., Mother, and their ten-month-old child (Child) were driving north along Route 33 when they ran out of gas. R.C. and Mother had been drinking alcohol. R.C. was driving, and Mother was holding Child in her lap in the backseat. After R.C. pulled the car over, Mother began hitting him multiple times, causing a black eye. While Mother held Child in her lap, R.C. punched Mother hard enough in the face that blood splattered in the car. He also punched Mother in the chest. Child was unharmed.

In August 2023, CYFD received a referral about this incident. Additionally, R.C. pleaded guilty to harassment and disorderly conduct before a magisterial district judge. Following an investigation, CYFD filed an indicated report of child abuse with the ChildLine Registry, naming R.C. a perpetrator of child abuse. In September 2023, CYFD also petitioned the Court of Common Pleas of Northampton County (trial court) for an adjudication of dependency and requested an order of protective supervision. Following a hearing in November 2023, the trial court adopted CYFD's pleadings detailing the relevant facts set forth above.

R.C. requested an administrative review to amend and/or expunge the indicated report of child abuse, but the Department denied this request. *See* Req. Form, 11/28/23; Dep't Letter, 1/11/24. R.C. requested and was granted a hearing in

---

[1] Unless stated otherwise, we adopt the factual background for this case from those findings adopted by the Court of Common Pleas of Northampton County (trial court) from CYFD's petition for adjudication and disposition. *See* Order of Adjudication & Disposition – Child Dependent, 11/9/23 (Dependency Order); Pet. for Adjudication of Dependency & Disposition Order, 9/27/23, ¶ 6 (a) – (h) (Dependency Petition). Although not credited by the trial court, it appears that this incident took place on either August 9th or 10th, 2023. *See* CYFD's Investigation/Assessment Outcome Rpt. No. 9883131, 10/12/23 (CY-48 Report).

May 2024 before an administrative law judge (ALJ), but R.C. failed to appear. *See* ALJ's Adjudication, 2/24/25; Hr'g Tr., 5/15/24, at 6.[2]

In R.C.'s absence, the ALJ held a brief hearing. There was no testimony, but CYFD clarified its position that R.C.'s conduct was reckless.[3] *See* Hr'g Tr. at 10. CYFD also introduced its CY-48 Report, the Dependency Petition, and the trial court's Dependency Order, each without objection.[4] Hr'g Tr. at 23. In light of CYFD's acknowledgment that there had been no specific finding of abuse, and in the absence of any expert medical testimony that could confirm whether there had been a reasonable likelihood of bodily injury[5] to Child, the ALJ concluded that CYFD could not meet its burden of proof and, therefore, recommended that BHA

---

[2] Notices of the hearing were not returned by the U.S. Postal Service as undeliverable. *See* ALJ's Adjudication at 1.

[3] Under the Child Protective Services Law (CPSL), 23 Pa.C.S. §§ 6301-6386, the term "recklessly" shall have the same meaning as provided in 18 Pa.C.S. § 302. 23 Pa.C.S. § 6303(a). Thus,

> [a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

[4] We note that the CY-48 Report constitutes hearsay. In administrative proceedings, hearsay evidence admitted without objection "will be given its natural probative effect and may support a finding of the [agency], if it is corroborated by any competent evidence in the record, but a finding of fact based solely on hearsay will not stand." *Walker v. Unemployment Comp. Bd. of Rev.,* 367 A.2d 366, 370 (Pa. Cmwlth. 1976). "In other words, an agency may not rely on unobjected-to, uncorroborated hearsay as its only support for a finding of fact—such evidence is not 'substantial and legally credible evidence.'" *S.K. v. Pa. Dep't of Educ.,* 342 A.3d 801, 811 (Pa. Cmwlth. 2025). Here, the operative facts were adopted by the trial court in its Dependency Order, which is competent evidence corroborating the CY-48 Report.

[5] Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S. § 6303(a).

sustain R.C.'s appeal. ALJ's Recommendation, 2/24/25; ALJ's Adjudication at 10-11 (citing *J.S. v. Dep't of Hum. Servs.*, 221 A.3d 333 (Pa. Cmwlth. 2019)).

BHA adopted the recommendation, and CYFD timely petitioned this Court for review.

## II. ISSUE

CYFD contends that the ALJ erred in concluding that expert medical testimony was necessary to establish that R.C. created a reasonable likelihood of bodily injury to Child. *See* Pet'r's Br. at 4.

## III. DISCUSSION[6]

CYFD maintains that there is substantial evidence of record establishing the accuracy of its CY-48 Report. *See id.* at 13. Essentially, according to CYFD, expert medical testimony was unnecessary because a factfinder could draw inferences from the facts of record to infer that R.C.'s conduct had created a reasonable likelihood of harm to Child. *Id.* at 9, 11.

In support of this argument, CYFD draws a distinction between "bodily injury" and "a reasonable likelihood of bodily injury." *Id.* at 12. While it concedes that the former must be supported by competent expert testimony, *see id.* at 9-10 (discussing *J.S.*), CYFD directs our attention to this Court's more recent decision in *Lancaster County Children and Youth Social Services Agency v. Department of Human Services*, 235 A.3d 402 (Pa. Cmwlth. 2020) (*Lancaster CYS*), which concluded that there was substantial evidence that a parent had created a reasonable

---

[6] Our review of agency decisions in child abuse expungement proceedings "is limited to determining whether constitutional rights have been violated, an error of law was committed, or necessary findings of fact were unsupported by substantial evidence." *R.J.W. v. Dep't of Hum. Servs.,* 139 A.3d 270, 279 n.2 (Pa. Cmwlth. 2016) (citing *G.V. v. Dep't of Pub. Welfare,* 91 A.3d 667 (Pa. 2014)).

likelihood of bodily injury to a child notwithstanding the absence of any expert medical testimony. *See id.* at 11-13.

In considering whether an indicated report should be expunged or maintained, the touchstone is accuracy. *L.S. v. Dep't of Pub. Welfare*, 828 A.2d 480, 483 (Pa. Cmwlth. 2003). The relevant county agency, here CYFD, must prove the accuracy of its report by substantial evidence. *Lancaster CYS*, 235 A.3d at 410; 23 Pa.C.S. § 6341(c). If the agency fails to meet this burden, a request for expungement will be granted. *Bucks Cnty. Child. & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare*, 808 A.2d 990, 993 (Pa. Cmwlth. 2002); *see J.S.*, 221 A.3d at 342-33.

For example, in *J.S.*, a father imposed corporal punishment on his child for ongoing behavior problems. *See J.S.*, 221 A.3d at 335-36. The father spanked the child, which resulted in bruising on the child's buttocks. *Id.* at 336. Upon referral, the county agency investigated and issued an indicated report of physical child abuse. *Id.* at 337. The father appealed the report, but, following a hearing, the ALJ denied the appeal, concluding that the father had caused bodily injury to the child by inflicting substantial pain. *Id.* at 340. In support of her decision, the ALJ credited photographic evidence depicting bruising on the child's buttocks several days after the spanking, as well as testimony from the child that the spanking "really hurt." *Id.*

Upon further appeal, this Court reversed. While we recognized that "photographic evidence may support a finding of severe pain, . . . we also have cautioned factfinders that they lack the expertise necessary to interpret medical evidence. *Id.* at 342-43 (citing *Zeigler v. Workers' Comp. Appeal Bd. (Jones Apparel Grp.)*, 728 A.2d 421, 424 (Pa. Cmwlth. 1999)). We concluded that the ALJ had exceeded her authority by "assum[ing] a correlation between the duration of a

5

bruise and a degree of pain . . . ." *Id.* at 343 (emphasis removed). Thus, the absence of expert medical testimony undermined the agency's effort to prove the accuracy of its report. *Id.* at 347 (concluding that the ALJ's determinations were "unsupported by the record").

In contrast, however, this Court has not required expert medical testimony to establish whether a parent created a reasonable likelihood of bodily injury to a child. In *Lancaster CYS*, a mother overdosed on heroin and was unconscious in her vehicle while her eleven-month-old son was in the back, strapped into his car seat. 235 A.3d at 405. All the windows in the vehicle were closed, and the temperature outside was 90 degrees. *Id.* at 406. Nevertheless, the child was not in distress when he was removed from the vehicle a short time later. *Id.*

Following an investigation, the county agency issued an indicated report of child abuse against the mother, concluding that she had created a reasonable likelihood of bodily injury to her child. *Id.* at 409. Following a hearing, which included testimony from the mother, the father, and investigators, but no medical experts, the ALJ sustained the mother's appeal and rejected the agency's determination because the child had not been without supervision for very long and because the child had not suffered any ill effects. *Id.* at 410.

Upon further review, this Court recognized that there are several distinct definitions of child abuse. *See id.* at 413. In relevant part, the CPSL provides that "child abuse" shall mean "intentionally, knowingly, or recklessly . . . [c]ausing bodily injury to a child . . . [or] [c]reating a reasonable likelihood of bodily injury to a child . . . ." *Id.* (quoting Section 6303(b.1) of the CPSL, 23 Pa.C.S. § 6303(b.1)). While the ALJ focused on whether the mother had *caused* bodily injury to the child (something not alleged by the agency), the ALJ failed to consider whether the mother

6

had *created a reasonable likelihood* of bodily injury to the child. *Id*. Based on the record, we concluded that the agency had met its burden to prove that the mother recklessly created a reasonable likelihood of bodily injury to the child and, therefore, reversed.[7] *Id.* at 414-15.

In this case, CYFD has not asserted that R.C. caused bodily injury to Child. *See* CY-48 Report. Thus, in considering the evidence of record, we agree with CYFD that the ALJ was not called upon to make medical determinations, *cf. J.S.*, 221 A.3d at 342-43, and CYFD was not required to present expert medical testimony to establish that Child had suffered the impairment of a physical condition or substantial pain. *See* 23 Pa.C.S. § 6303(a). Rather, as in *Lancaster CYS*, CYFD was merely required to present substantial evidence that R.C. had recklessly created a reasonable likelihood of bodily injury to Child. 235 A.3d at 413-15.

Here, CYFD established that R.C. punched Mother in the face and chest, more than once and hard enough to splatter her blood while Child sat in Mother's lap. *See* Dependency Order; Dependency Petition, ¶ 6 (a)-(h). Further, in considering this evidence, the ALJ noted that R.C.'s conduct created an "obvious" risk of bodily injury to Child. Hr'g Tr. at 12, 13 ("We know that there is a risk."). Based on the record before us, CYFD met its burden to prove the accuracy of its report. *See Lancaster CYS*, 235 A.3d at 410; 23 Pa.C.S. § 6341(c).

---

[7] In other cases that considered whether a caregiver had created a reasonable likelihood of bodily injury to a child, this Court has focused on the nature of the caregiver's conduct or blameworthiness. *See, e.g.*, *R.L. v. Dep't of Hum. Servs.*, 236 A.3d 1183 (Pa. Cmwlth. 2020) (concluding that petitioner had not consciously disregarded a known risk when she accidentally fell asleep while working an overnight shift at a childcare facility and the child was later found walking down a busy street in the middle of the night; further noting that the agency had not presented substantial evidence that a reasonable likelihood of bodily injury existed; yet not requiring such evidence to be presented by a medical expert).

## IV. CONCLUSION

The ALJ's reliance upon *J.S.* was misplaced. In our view, the facts of this case more closely align with those in *Lancaster CYS*. Therefore, we reverse the order entered by BHA and direct the Department to maintain the indicated report of child abuse on the ChildLine Registry.

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Northampton County Children : **CASE SEALED**
Youth and Families Division, :
          Petitioner :
  : No. 350 C.D. 2025
          v. :
  :
Department of Human Services, :
          Respondent :

## **O R D E R**

AND NOW, this 21st day of January, 2026, the order issued by the Department of Human Services Bureau of Hearings and Appeals on February 27, 2025, is REVERSED. The Department shall maintain the indicated report of child abuse on the ChildLine Registry.

 

**LORI A. DUMAS, Judge**